May I have a minute just to get everything up here that I just... Take your time. Do what you need to do. You asked for time to bring things up, of course. Yes, sir. Sure, sure. You know, there's an old saying, beware of the lawyer who carries a single book. There are a lot more than just one over there. Okay, and you can make that go down if you push the little switch on the side. So put it wherever you want. I kind of wanted to raise it up to here, but... No, okay. Is that okay? Okay. So, may I start? May it please the Court, Renee Kennedy, on behalf of Appellant Ms. English, with me at council table is Christopher Deaves. May I please reserve four minutes for rebuttal. The first error is that the Court incorrectly characterized all of Ms. English's claims as arising out of whether or not she got new phones. However, two of her claims have nothing to do with that. One is how long the AppleCare Plus extended warranty lasts, and the other is how many accidental damage incidents do you get with it. So whether or not she got new phones, and even if she did, which that's a separate error and I'll address shortly, English still has standing to pursue her claims. And this is a highly unusual request, but if we cannot get a new judge assigned to this case, we will not be moving forward with the English case. And that being said, my understanding is the likelihood of that is remote at best. So I'm going to ask the Court to indulge me. I'm sorry. Let me speak. Get a drink of water. We'll stop the clock. Stop the clock. Okay. Only when you're ready. Take your time. Okay. So I was going to ask the Court to allow me to speak freely without interruption for a little bit of time so that I can make sure that I get everything out there because this may be the last time I ever speak to a court regarding this case again, and I'd like to get it on the record. Okay. So I'll continue. With respect to length of coverage of the plan, her salesperson told her that she would have two years from the date of her AppleCare Plus purchase and the Apple Call Log ER-675 shows other consumers thought that too. English was required to read the repair terms and conditions at the point of sale. This is critical. When she's there buying her AppleCare Plus program, the extended warranty, and she's purchasing the phone at the same time because you're doing it at the same time, it's a contemporaneous transaction. In the record, you will see from ER-1020 through ER-1084, it goes screenshot by screenshot, the whole transaction, as it would be for Ms. English's program. That program has since discontinued, but for her program, you will see how it operated. And if you look at ER-1034 through ER-1036, you will see that she was required to read. She had to confirm she read them by checking a box, and the testimony shows that she had to be the one that checked the box. And then she had to sign on top of it. And the significance of the repair terms and conditions is here she is buying an AppleCare Plus extended warranty, and then she's signing repair terms and conditions, and they are silent as to the two years and two incidents. And that's omitted from it. Didn't your client get an AppleCare Plus certificate that specifically said coverage period end date September 25, 2014? So that was received subsequent to her purchase. And so that only, that particular AC Plus certificate suggests that what she was told was that her 24 months of coverage began that day because the serial number in the AppleCare Plus certificate, that serial number is for the phone that she actually purchased that day. That's the serial number. And if you look at the second sentence of the AC Plus certificate, it says that the certificate they're talking, the product they're talking about is for the product listed above. The only product listed above is the phone that she purchased that day. And then furthermore, the AppleCare Plus terms and conditions she also received that evening, she received multiple emails that evening after the store closed. The AppleCare Plus terms and conditions themselves at ER611 corroborate the fraudulent scheme, the intent, the misrepresentation, the omissions, all of it. If you look closely, it states that there's an exclusion for preexisting damage. And I wanted to actually read it to you. If you look at ER611, this is really important. It says, and this is the AppleCare Plus terms and conditions that she got after the transaction. So it really corroborates what they've been doing. It says the plan does not apply to a preexisting condition on any covered iPhone if you purchase the plan after you purchase the covered phone. They're saying the covered phone was that backdated phone that she purchased from Sprint like five or six months earlier. No reasonable consumer is going to understand when they buy an AppleCare Plus extended warranty for that day and they're being told, yeah, it's going to last two years. No reasonable consumer is going to understand that somehow when they're being told it's a two-year plan, that actually the two years was backdated to some phone. They didn't even buy it, Apple. They didn't even buy it that day. You know, so they're backdating to an old phone. But yet here in their own AppleCare Plus terms and conditions, it says the plan doesn't apply if there's a preexisting condition. So the phone that they're applying it to had a cracked screen. It had a preexisting condition. And here they're saying that, okay, let me keep going. So that's a very critical piece right there. All right. If you also look in that AC Plus certificate, you'll see that it indicates, it sounds like that the phone that she bought that day was the product that triggered the 24 months. Okay. With respect to the number of incidents, the district court agreed that there was a genuine issue as to whether English was denied coverage for a second incident, but found that she could not establish reliance because she never read the AppleCare Plus terms and conditions and therefore could have only pled a breach of contract. But English is relying on oral misrepresentations made to her by her salesperson poster act. They are material misrepresentations. English did sign the repair terms and conditions at the point of sale, but that information is omitted. And these are material omissions. Here, Apple's person with most knowledge, Williams, confirmed at his deposition that AppleCare Plus allowed consumers to future incidents, okay, which is what English's salesperson told her. So there was an oral misrepresentation likely to deceive. Please note that ER 1367, which the person with most knowledge, Williams, says, it's really important what he says there. And if you read that side by side with page 28 of English's reply brief, you will see that the initial phone that she bought from Apple on February of 2013, at the same time as her AC Plus warranty coverage, counted as an incident. And also, that wasn't supposed to count as an incident. It wasn't, but it did. It counted against her. And you had evidence in the record? Tons of it. That this happened to others as well? Yes, sir. In fact, there's a plethora of evidence. Besides call logs, even Apple admitted both in their opposition brief and then also through the Healy Declaration. The Healy Declaration and their own briefing says that more people consumed second incidences than in any other program ever in their history. They were so proud. We're so proud. This is a very great program. More people use second incidences than in any other program. Yeah, because the first time you go into the store, it's counted against you. So it burnt through your first one. And we also have a declaration from somebody who worked at Apple, Gabriel Tapia. And he said that, you know, they found out that the first one burnt up because customers were coming in trying to use the second one, and they were like, oh, it shows you don't have another one. And customers were complaining, like, what do you mean I don't have another one? We have call logs that show that, so we have their own employees saying it. We have call logs showing that. It happened to my client. The name of their program is Apple Care Plus Enroll at Time of an Incident. And if you look at what Williams was saying, you know, in 1367, and you read it side by side with page 28 of my brief, you'll see all three would be considered transactions. All three meaning the first time you go and make the purchase, and then the subsequent two times that you were supposed to get an incident, but actually you never got that incident. And then there's one other thing I want to show you, too, that's critical. So you don't run out of time. I have a question I wanted to ask about the new phone issue. Yes, sir. If for some reason we were to agree with you that Apple's evidence was insufficient to establish that your client got new phones, but also that your evidence was insufficient to establish a tribal issue of fact on whether you got used phones, what should we do in that case with regard to the grant of summary judgment by Judge Orrick? Well, the court bifurcated the discovery. He said that it had to be tethered to certification issues, and there were tons of objections from them, and the court was very strict about it. This needs to be tethered to class certification. So we had no idea that we were litigating on her merits-based individual claim contemporaneous. I mean, as far as we knew, that was the certification. So the answer would be, the long and short of it, is additional discovery and testing of her phone. We have the phone. So if this court were to allow us to test her phone and conduct additional discovery, Lanigan's declaration is a hearsay declaration. Counsel, why did you need anybody's permission to test the phone that was in your possession? In your own client's possession. Okay. So they would claim spoliation. The judge would also agree with that. And we wanted to make sure we dotted our I's and crossed our T's. And now we have a phone that we could test if the court gives us permission to test it. They would have claimed spoliation. They already did. They said, if you open it, it's dead in the water. Regardless of what they would claim, did you need Judge Orrick's permission or Apple's permission to test the phone? Again, yes, we needed the permission from the sense that they would claim spoliation. I mean, we were working against not just Apple, but, you know, other forces. It wasn't a level playing field. And we wanted to make sure that we didn't, you know, take away an opportunity in somebody to claim spoliation, which they said they would do. But I did want to say this one thing, if I may. ER 1419, it's a very critical document. And I go into details in the briefing on it. That's the trigger notes. Those are the documentation notes that Apple's own documentation. And it says, documenting Ms. English's attempt to use her second incident. And in their notes it says, does the device pass or fail VMI, visual and mechanical inspection, if that's what it means. And it says, fail, eligible for out-of-warranty paid service. Reason, chips or multiple fractures to front glass or back glass. The whole reason why you have AC+, is so that if you crack your screen, your front or back glass, you can use it. This is proof that you don't, that she didn't get to use her incident. They're failing it, the reason, because she doesn't have glass. She had cracks on her screen. Do you see? That's in their own documents. They denied her an incident, and that's what their document shows. Okay. Real quick. The materials referred to by Lanigan in the declaration were never produced in violation of Rule 56C1A. 56C1A outlines the procedure for 5060, and it's really crystal clear. It says that you have to put the materials in the record. His Lanigan declaration alone is worth zero. There's no evidence that she got a new phone. It's zero. All of the case laws says you have to put the actual records upon which they're based in there. At his deposition, Lanigan confirmed that the networks of information about the phones are maintained by vendors in Asia, with whom Apple works on its iPhones. Lanigan reaches out to them for information when he needs things. It's not even their records. It's hearsay on hearsay. The declaration violates the best evidence rule. It's contradicted by other evidence I'll address shortly. I tried to get the discovery on this. The court denied the certification in January. In February, I filed a motion for reconsideration. I asked for discovery. In March, I filed a reply to the reconsideration and asked for discovery. April, May, and June, the cases stayed. June, I filed a CMC statement and asked for the discovery. July 19th, not 9th, as it says in the order, but in July 19th, I asked the judge, judge, are you going to let me do the discovery? He says yes. And I said, I feel like the door is left open. Nobody objected. I propounded discovery August 31st. Apple wouldn't accept e-service discovery. So I sent it out by mail September 1st. And that would have given them six weeks. They got it September 2nd. That would have given them six weeks to answer. There was ample opportunity for them to answer the discovery and to give me the answers to on what basis, because one of my questions was, what basis were the phones new or not? What did you use to determine? What did you rely on? And their answers were very telling. You know, oh, nothing admissible. It's irrelevant, those kind of answers. There's nothing that will lead to anything admissible. That's the response that I got. And then the judge was happy with all of their responses. We briefed it. We did everything the way that he told us to. And in one of his orders, he says, you know, they said they'll answer 19 interrogatories. Well, what about all of the requests for production? We didn't even get one single document. There was ample time for us to get that. The phone had been in my former co-counsel's drawer, and he had misplaced it and had forgotten where he had put it. And that's why it wasn't, you know, when he located it, it was in October. We had a plethora of motions requesting testing, requesting guidance to testing. And really, he found it in October. He located it in October. So, you know, and the hearing was in December. And we did request the discovery on that phone. And as far as the paper discovery part of it, we've been requesting all along. I'd like to reserve 44 seconds. We will make sure you get another chance to respond. Thank you. Thank you, Your Honor. May it please the Court. I'm Joseph Palmore here on behalf of Apple. The district court correctly entered summary judgment on plaintiff's misrepresentation claims for lack of causation and lack of any misrepresentation, and on her labeling claims because the phone she received were new. The court also correctly exercised its broad discretion not to reopen discovery and postpone summary judgment proceedings in this long-pending case. I'd like to start with the misrepresentation claims. And there are two kind of cross-cutting issues there, one dealing with oral representations and one dealing with written representations. As the district court found, plaintiff did not assert that there was any genuine issue of material fact with respect to oral misrepresentations. So those are out of the case. That was a contrast to the class certification proceedings where there was a lot of argument about oral misrepresentations. But when you look at plaintiff's summary judgment opposition, she was asserting an omissions theory based on the written representations that Apple provided. We pointed this out. This was the basis for the district court's holding that oral representations were not in the case. Plaintiff didn't address that in her opening brief. In any event, the district court was correct. That leaves written representations. But the district court found those out of the case as well for the simple and basic reason that plaintiff acknowledged that she didn't read any of them. And whether you look at that as a matter of Article III causation or as a matter of the exposure requirement under substantive California law for causes of action, those written representations aren't part of the case. One can't assert a false advertising claim based on an advertisement that one hasn't seen. So with oral representations out, with written representations out, that left only the plain white box theory. And the district court correctly concluded that the fact that these replacement phones come in an unbranded plain white box, the broken phone goes back into that box and goes into the back was not a representation. Unbranded plain white box. I've purchased Apple products. Plain white box is basically Apple brand. If you buy a plain white box, just like you buy a blue box from Tiffany, you recognize that it's an Apple box. Well, Your Honor, the record, and we reproduce photos in the briefs, and they are quite different. Some of the branded boxes are white, but they have the Apple logo. They have the image of the phone. They look quite different. And you take that box with you. You don't take this plain white box with you. The broken phone goes back in it, it gets sealed up, and it gets sent back into the back of the shop. You don't get accessories. It's not a representation of any kind, much less a representation that what's in the box is new. So that was the kind of cluster of issues around representations, misrepresentation claims. And then there was the secondhand merchandising claim. And that claim failed for the basic reason that there was no secondhand merchandise here. The phones she received were new. What's the admissible evidence in the summary judgment record that the phones were new? The Lanigan Declaration, Your Honor. Why didn't the Lanigan Declaration have admissible evidence? His statement that based on his personal knowledge and his review of Apple's business records, that the phones were new. But that's not what he says. What he says is, based on my research and analysis of Apple's records, the phone is a new phone. So he can only be doing one of two things. He can either be verbatim reciting what's in the record, or he can be expressing his opinion as to what the records show. And I don't see how either of those would be admissible. The first violates the best evidence rule. The second is an impermissible opinion by a non-expert. No, Your Honor. It was based on his review of various databases. And at summary judgment, what matters is that the form that the party could put this evidence before the court at trial in some admissible form. And here the admissible form would be his personal testimony and Apple's business records. His personal testimony as to what? As to his review of the databases, Your Honor. I've looked at these records, and this is what they say. Correct, Your Honor. How does that not violate the best evidence rule? Your Honor, it doesn't because, first of all, there was no such objection made in the district court. And because at summary judgment under this Court's decision in Fraser and under Rule 56, what matters is could the party put the evidence before the court in admissible form, not whether the piece of paper would itself be admissible. And here he could do that by testifying and by submitting the records. But in any event, Judge Bennett, you asked what would happen if that didn't count. The secondhand merchandising claim requires her to establish that the phones were not new. It was her burden. So even if you were to take that Lanigan Declaration out, then there is no evidence on either side, and she hasn't carried her burden in summary judgment would be appropriate. Did you make that argument below? Well, we argued we didn't need to make that argument below. Did you make that argument? I don't believe we made an argument in quite those terms because the Lanigan Declaration was in. She had the opportunity, and this ties into the 56D analysis, Judge Bennett. She had the opportunity to seek discovery on the Lanigan Declaration. And she lost that chance. She didn't act in a diligent fashion. The Lanigan Declaration came in with Apple's class certification opposition in September 2015. Discovery was still open then. Depositions were still being taken. She could have sought discovery at that time, as the district court found, and she did not do so. In July of 2016, at a case management conference, Judge Orrick said, if you've got additional discovery you want in your individual claims, go out and get it. She didn't do so until late August. She didn't act with the diligence that's required to postpone summary judgment proceedings to get additional discovery. Well, even if that's true, and even if Judge Orrick didn't abuse his discretion, I still don't see how the Lanigan Declaration, even under the standard you're citing, contains admissible evidence that the phones were new. I mean, it basically says, I've looked at records and they say the phones are new, and you didn't produce the records or provide, even in the declaration, a basis for finding that the records actually were Apple's business records. Your Honor, I think you have to look at this in the context of the entire case and when this declaration came in at a time when the newness of the phone was very much at issue and the plaintiff never asked for those records during that time when discovery was open and in fact came to the class certification hearing and said, we accept that the phone was new and we recognize that might be a problem with class cert, but we will perhaps go out and find another class representative. Then the district court relied on that concession in the class certification denial, said there's a concession here that the phone is new. So I think you can't divorce the kind of evidentiary issues surrounding Lanigan from the overall course of proceedings that Judge Orrick lived with for years. He knew these parties, he knew counsel, he knew this case and he knew how discovery had unfolded and he concluded that enough was enough, discovery shouldn't be reopened for the Lanigan to look past the Lanigan declaration to test the phones that plaintiff hadn't acted with the diligence that's required. But even if you're not convinced that the phone that Apple established that the phones were new, the secondhand merchandise claim fails for a separate and independent reason, it's one the district court found unnecessary to reach but that we did argue below, which is that there's no sale of merchandise here. These phones are provided as part of a service, as part of an extended warranty service plan. Although they only pay when they get the new phone, right? They pay a service fee when they get the new phone. It's the same service fee they would pay, Judge Bennett, if a phone was repaired. It's a $49 service fee. If you come in with your phone and you say, it's not working, if it's because of a software problem or a mechanical problem that was inherent in the phone, it's fixed for free under the normal warranty. If it is an out-of-warranty repair because it's the result of accidental damage, then Apple will attempt to repair it. That costs $49. If it can't repair it, it will replace it. But you get a phone and you pay money. Wouldn't it be a factual issue whether you were paying for the phone or for something else that isn't covered by the California law? I don't think so, Your Honor. I think you would look at the terms of the contract and you would look at the nature of the relationship and the nature of the service that's being provided. But your calling it a service fee is not conclusive. It is not an exchange for money that we might characterize as a sale. I don't know that it's conclusive. I think it's quite relevant. It's Apple's label. I mean, you can call it anything you want. Right, Your Honor. But these aren't phones that are kind of out on the display for that someone says, I want to buy that phone. These are in the service stock in the back of the store that are brought out as replacement phones pursuant to an extended warranty. So it's not just the label, although the label is important. It's the nature of the contractual relationship. These phones aren't advertised for sale. They are provided as replacements if the phone can't be repaired. Where did you argue this in your summary judgment motion that the mislabeling law doesn't apply to the replacement transactions? I don't have that right in front of me, Your Honor, but in our red brief we do cite to the portion of our summary judgment motion where we made this argument. And we've made it again here as an alternative ground for affirmance. On the two years issue, Your Honor, Judge Bennett, you asked this question. The receipt, the certificate couldn't be any clearer. It says coverage period end date, September 25th, 2014. September 25th, 2014 was two years from the acquisition of the original Sprint phone. That seems so counterintuitive. I get a phone and I buy a service that says two years and it goes back to a date for an entirely different phone. I guess you could write something and it were clear enough and I knew at the time of the transaction that would be okay. But that's not what a normal consumer would expect when you buy a two-year warranty. You would expect it to run from the date you purchased the warranty. Well, Your Honor, the terms here are totally clear. This was ER 610. Coverage begins when you purchase the plan. Coverage ends 24 months from the date of retail purchase of your original iPhone. And that's consistent with the certificate. Well, did she actually purchase the iPhone? I mean, at least the way Sprint viewed it, she got it for free, right? She entered into a wireless contract. That was the consideration for the acquisition of the phone. So it was a contract with somebody else entirely, not Apple, and Sprint advertised it, I'm sure, as you're getting a free phone. That's perhaps true, Your Honor, but the coverage period end date on the certificate clearly says that it's two years from the acquisition of that phone. And that actually makes sense. This is an extension. This is a one-year extension on the basic warranty. And for this limited time period that is at issue here, Apple presented customers with the opportunity, kind of a buyer's remorse opportunity. Like, I wish I had bought an AppleCare Plus when I got this phone originally. So if you come in with a cracked screen, as Ms. English did, Apple afforded that customer the opportunity to kind of go back in time and get the AppleCare Plus that she originally could have obtained at the time she acquired her phone. But she doesn't end up better off because she delayed. And so I apologize. I want to go back to an issue you talked about early in your argument where you said that it's clear that a plaintiff waived the oral misrepresentation theory, that she put in a declaration stating what Mr., I think it's Mr. Podsorak's alleged oral misrepresentations were in her opposition to summary judgment. She talked about representation by employees and what Apple associates said. Why isn't that sufficient to not be considered a waiver of the oral misrepresentation theory? Well, the district court correctly exercises discretion to conclude that that wasn't enough and that was correct. It's not enough to just attach a bunch of declarations. It's not enough to just generically refer to misrepresentations. If you look at Rule 56C1A, a party asserting a genuine issue of material fact must quote, cite to particular parts of materials in the record. And then 56C3 says the district court need consider only the cited material. Now it has discretion to go further and consider other material in the record, but it's not obligated to do so. And the district court did decide the oral misrepresentation claim on the merits, correct? Well, I don't know that it decided it on the merits with respect to, it found that they weren't part of the case and then it concluded that any of the written materials were both also not part of the case because there was no causation, she wasn't exposed to them and they weren't misleading in any event. They were completely accurate. With respect to the second incident claim, I wanted to respond to a couple things that plaintiff's counsel said that this happened to others. Ms. Healy, if you look at the Healy declaration and she's the worldwide product manager, she says that Apple consistently did provide second incidents and did not count the incident at the time of acquisition. Is that in her declaration, if I'm reading it correctly, based essentially on what her subordinates told her? Based on her own review and this is a corporation of course and it acts through agents and we haven't had a particular evidentiary objection even in this court to the Healy declaration and in fact plaintiff's counsel attempts to rely on it herself. She points to the Tapia declaration as supposed evidence that there was some widespread pattern but if you look at ER 28 footnote 21, the district court excluded that portion of the Tapia declaration as conclusory and speculative because he acknowledged that he didn't know how Apple computed these incidents that as a genius he was a line level retail employee. All he could see was that there were no incidents left. He couldn't see what incidents had been used or how they had been used and he had no idea how the software worked. He was speculating and the district court correctly found that there was no basis for that speculation. So with him out and with Healy in, all you have is uncontested evidence that there was no widespread problem here. So if the court has no further questions, we would ask the court to affirm the judgment below. Any more questions from the bench? Okay, thank you very much. Would you put three minutes on the clock, please? Thank you. Your 45 seconds has just expanded to three minutes. Thank you, Your Honor. This is 241. I'm going to take every second. There we go. Thumbs up. Okay, first, the statutes under which English prints are claimed are remedial in nature and serve the greater good beyond these consumer transactions. A couple of iPhones, a shortened number of incidents or shortened time on the plan. If they correct continuing misrepresentations by a retailer like Apple to an average consumer in America, every dollar counts and helps. I know it matters to Ms. English, who's a nurse. So this honorable court has within its power to help billions of consumers in the years to come just through this case, albeit it's an individual case. But what you do today and what you all decide can impact greatly Apple's practices going forward, and you'll save many, many people. The recovery was not for just $300 for one phone. We dispute that's the correct number of the phones to even consider. But there's also the value of the Sprint phone she turned in, the diminished value for an extended warranty that's not two years and not two incidents. Attorneys' fees in the seven figures, I've worked my heart out. And I've also had some assistance I've paid to help me for years and years. Plus allowed costs and expenses such as expert fees, deposition costs, et cetera. Plus Apple requested English pay Apple's costs. So we have to face that as well going forward. I have been working on Ms. English's case for approximately six years. And I told you the number of hours I've spent has been in the five digits. I've exhausted resources, gone into debt. And I've learned a lot, and I'm grateful for that. Again, but we don't want to move forward unless we get a different court. And then back to some of what he said earlier. One thing I want you to note as far as the polishing the Apple, positive act, English's salesperson, that is her salesperson. We disposed of her when he was asked, why do you bring a white box out? Why do you go through that whole thing? He actually testified he has the customer peel the plastic off the face of the phone. He said because it instilled trust in the consumer and they know what they're getting is new. What they're getting is likely not new. Yes. Are you specifically asking us to affirm unless we are willing to disqualify Judge Oreck from hearing this case on any remand? Is that your request today? I guess that is my request today. Because I can't work another six or seven years and spend all of my family's resources, assets, and time. And at the end of the day, the person that makes the decision as to the attorney's fees is Judge Oreck. And then get paid nothing for 12 to 14 years and just continue to be in debt. And I talked it over with my client and we're on the same page. We want to see reform. We want to see change happen. We put in six good years. If this court is willing to change to a different court, we'd be happy to. But respectfully, Judge Oreck has a great respect for Apple and he's very concerned about burdening Apple. That's been a consistent theme throughout. And if this court gives us a chance with a fresh perspective, a court where we can get a fresh perspective, we'd love to move forward with this case. And we'll fight zealously for the consumer, for the little guy. Thank you for your time. I'm asking Judge Bennett's question again just to make sure that we're on the same page. If we don't remand to a different judge, you're asking us simply to affirm? I guess that's what I'm asking. Okay. All right. Thank you very much. English versus Apple Inc. submitted for decision. And that concludes our argument for this morning. Thank you.
judges: Hawkins, W. Fletcher, Bennett